RACHELE R. BYRD (SBN 190634)
MARISA C. LIVESAY (SBN 223247)
BRITTANY N. DEJONG (SBN 258766)
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
byrd@whafh.com
livesay@whafh.com
dejong@whafh.com

*Attorneys for Plaintiff*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SHIVA STEIN,<br><br>                  Plaintiff,<br><br> v.<br><br>ELECTRONICS FOR IMAGING, INC., ERIC BROWN, JANICE DURBIN CHAFFIN, GILL COGAN, GUY GECHT, TOM GEORGENS, RICHARD KASHNOW, DAN MAYDAN, and WILLIAM D. MUIR, JR.,<br><br>                  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Shiva Stein ("Plaintiff"), by her attorneys, makes the following allegations against Electronics For Imaging, Inc. ("EFI" or the "Company") and the members of the board of directors of EFI (the "Board" or "Individual Defendants," along with EFI, collectively referred to as the "Defendants"), for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed merger (the "Proposed Transaction") between EFI and affiliates of Siris Capital Group, LLC ("Siris"). The allegations in this complaint are based on the personal knowledge of Plaintiff as to herself and on information and belief (including the investigation of counsel and review of publicly available information) as to all other matters stated herein.

## **INTRODUCTION**

1.     This is an action brought by Plaintiff to enjoin the Proposed Transaction whereby and East Merger Sub, Inc. ("Merger Sub") will merge with and into EFI, with EFI continuing as the surviving corporation in the Proposed Transaction for $37.00 in cash for each EFI share owned (the "Merger Consideration"). The Board has unanimously recommended to the Company's stockholders that they vote for the Proposed Transaction at the special meeting of the EFI shareholders scheduled to be held on July 15, 2019.

2.     To convince EFI stockholders to vote in favor of the Proposed Transaction, on May 31, 2019, the Board authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy") with the Securities and Exchange Commission ("SEC").[1] The Proxy violates Sections 14(a) and 20(a) of the Exchange Act by noncompliance with Regulation G and SEC Rule 14a-9 (17 C.F.R. § 244.100 and 17 C.F.R. § 240.14a-9, respectively).

3.     Defendants have failed to disclose certain material information necessary for EFI stockholders to properly assess the fairness of the Proposed Transaction, thereby violating SEC rules and regulations and rendering certain statements in the Proxy materially incomplete and misleading.

---

[1] The Proxy was amended on June 11, 2019.

4.     In particular, the Proxy contains materially incomplete and misleading information concerning the financial forecasts for the Company prepared and relied upon by the Board in recommending the Company's stockholders to vote in favor of the Proposed Transaction. The same forecasts were used by EFI's financial advisors, Morgan Stanley & Co. LLC ("Morgan Stanley") and Greenhill & Co. LLC ("Greenhill") in conducting their valuation analyses in support of their fairness opinions. The Proxy also contains materially incomplete and misleading information concerning certain financial analyses performed by Morgan Stanley and Greenhill.

5.     The material information that has been omitted from the Proxy must be disclosed prior to the forthcoming stockholder vote in order to allow the stockholders to make an informed decision regarding the Proposed Transaction.

6.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violations of Regulation G and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from holding the stockholders vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless, and until, all material information discussed below is disclosed to EFI stockholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated without corrective disclosures, to recover damages resulting from Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

8.     This Court has personal jurisdiction over each defendant named herein because each defendant is either a corporation that does sufficient business in California or an individual who has sufficient minimum contacts with California to render the exercise of jurisdiction by the California courts permissible under traditional notions of fair play and substantial justice.  All of the Defendants conduct business and/or maintain offices in California.  The corporate office of EFI is located at 6750 Dumbarton Circle, Fremont, CA 94555.

9.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because EFI is headquartered in this District.

## PARTIES

10.     Plaintiff has owned the common stock of EFI since prior to the announcement of the Proposed Transaction herein complained of and continues to own this stock.

11.     EFI is a corporation duly organized and existing under the laws of Delaware and maintains its principal offices in San Jose, California.  EFI is, and at all relevant times hereto was, listed and traded on the NASDAQ Stock Exchange under the symbol "EFII."

12.     Eric Brown has been a member of the Board since April 2011.

13.     Janice Durbin Chaffin has been a member of the Board since November 2018.

14.     Defendant Gill Cogan has been a member of the Board since 1992 and served as Chairman of the Board of Directors since June 28, 2007.

15.     Defendant Guy Gecht has been a member of the Board since 2000.

16.     Defendant Tom Georgens has been a member of the Board since 2008.

17.     Defendant Richard Kashnow has been a member of the Board since 2008.

18.     Defendant Dan Maydan has been a member of the Board since 1996.

19.     Defendant William D. Muir, Jr. was elected to serve as the Company's President, Chief Executive Officer, and a director effective October 15, 2018.

20.     The Defendants referred to in paragraphs 12-19 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

21.     The Defendants referred to in paragraphs 11-19 are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

***The Proposed Transaction***

22.     On April 15, 2019, EFI announced that it had entered into the Agreement and Plan of Merger (the "Merger Agreement"):

FREMONT, Calif., April 15, 2019 (GLOBE NEWSWIRE) -- Electronics For Imaging, Inc. (Nasdaq: EFII), a world leader in customer focused digital

printing innovation, today announced that it has entered into a definitive agreement (the "Agreement") to be acquired by an affiliate of Siris Capital Group, LLC ("Siris") in an all-cash transaction valued at approximately $1.7 billion. Siris is a leading private equity firm focused on investing and driving value creation in technology companies that provide mission-critical solutions and are facing technology transitions.

Under the terms of the Agreement, which has been unanimously approved by EFI's Board of Directors, an affiliate of Siris will acquire all the outstanding common stock of EFI for $37.00 per share in cash. The purchase price represents an approximately 45% premium over EFI's 90-day volume-weighted average price ended on April 12, 2019.

EFI may solicit alternative acquisition proposals from third parties during a "go-shop" period over the next 45 calendar days. EFI will have the right to terminate the Agreement to enter into a superior proposal subject to the terms and conditions of the Agreement. There is no guarantee that this process will result in a superior proposal, and the Agreement provides Siris with a customary right to attempt to match a superior proposal. EFI does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or is otherwise required.

* * *

EFI's Board of Directors has unanimously recommended that its shareholders adopt the Agreement with Siris. Subject to the go-shop, a special meeting of EFI's shareholders will be held as soon as practicable following the filing of the definitive proxy statement with the U.S. Securities and Exchange Commission ("SEC") and subsequent mailing to shareholders.

Subject to the go-shop, the proposed transaction is expected to close by the third quarter of 2019 and is subject to approval by EFI's shareholders, along with the satisfaction of customary closing conditions including antitrust regulatory approvals. The transaction is not subject to any financing conditions. Upon completion of the acquisition, EFI will become wholly owned by an affiliate of Siris.

EFI will file its quarterly report on Form 10-Q reporting its first quarter financial results but does not intend to host a quarterly earnings call. EFI currently expects Q1 2019 revenue to be between $220 million and $225 million.

**Financing & Advisors**
Equity financing will be provided by investment funds affiliated with Siris. Siris secured committed debt financing for the transaction from RBC Capital Markets, KKR Capital Markets LLC, Deutsche Bank Securities Inc., Barclays, Credit Suisse, and Macquarie Capital.

Sidley Austin LLP is serving as corporate counsel, Kirkland & Ellis LLP is serving as financing counsel, and RBC Capital Markets is serving as M&A advisor to Siris in connection with the transaction. Morgan Stanley & Co. and Greenhill & Co., LLC are serving as financial advisors to EFI, and O'Melveny & Myers is serving as its legal counsel.

### The Materially Misleading and Incomplete Solicitation Statement

23.     On May 31, 2019, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Transaction. The Proxy was amended on June 11, 2019. The Proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction. Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Financial Forecasts

24.     The Proxy discloses tables for the Base-case management projections, Downside-case management projection, and Upside-case management projections. However, the Proxy fails to provide material information concerning these financial forecasts, which were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Transaction. Proxy at 58. These financial forecasts were also relied upon by the Company's financial advisors, Morgan Stanley and Greenhill, in rendering its fairness opinions.

25.     With respect to the Projections, the Proxy fails to provide: (i) the value of certain line items used to calculate these non-GAAP measures:  non-GAAP operating income, non-GAAP net income, non-GAAP earnings per share, and non-GAAP EBITDA and (ii) a reconciliation to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section

14(a).  Proxy at 58.

26.     The SEC has indicated that if the most directly comparable GAAP measure is not accessible on a forward-looking basis, the company must disclose that fact, provide any reconciling information that is available without unreasonable effort, identify any unavailable information and disclose the probable significance of that information. A company is permitted to provide the projected non-GAAP measure, omit the quantitative reconciliation and qualitatively explain the types of gains, losses, revenues or expenses that would need to be added to or subtracted from the non-GAAP measure to arrive at the most directly comparable GAAP measure, without attempting to quantify all those items.

27.     When a company discloses non-GAAP financial measures in a registration statement that were relied on by a board of directors to recommend that shareholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all forecasts and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28.     Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders. Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific, non-GAAP financial measures (as EFI included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors.  And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherrypicking; and the use of cash per share

data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[2]

29.     The SEC has repeatedly emphasized that disclosure of non-GAAP forecasts can be inherently misleading and has therefore heightened its scrutiny of the use of such forecasts.[3] Indeed, the SEC's Division of Corporation Finance released a new and updated Compliance and Disclosure Interpretation ("C&DI") on the use of non-GAAP financial measures to clarify the extremely narrow and limited circumstances, known as the business combination exemption, where Regulation G would not apply.[4]

30.     More importantly, the C&DI clarifies when the business combination exemption does not apply:

> There is an exemption from Regulation G and Item 10(e) of Regulation S-K for non-GAAP financial measures disclosed in communications subject to Securities Act Rule 425 and Exchange Act Rules 14a-12 and 14d-2(b)(2); it is also intended to apply to communications subject to Exchange Act Rule 14d-9(a)(2). This exemption does not extend beyond such communications. Consequently, if the same non-GAAP financial measure that was included in a communication filed under one of those rules is also disclosed in a Securities Act registration statement, proxy statement, or tender offer statement, this exemption from Regulation G and Item 10(e) of Regulation S-K would not be available for that non-GAAP financial measure.

*Id.*

---

[2]     Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (last visited Mar. 7, 2019) (emphasis added).

[3]     *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, HARVARD LAW SCHOOL FORUM ON CORPORATE GOVERNANCE AND FINANCIAL REGULATION (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/ (last visited Mar. 7, 2019); Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. TIMES, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0 (last visited Mar. 7, 2019).

[4]     *Non-GAAP Financial Measures*, U.S. SECURITIES AND EXCHANGE COMMISSION (Apr. 4, 2018), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm#101 (last visited Mar. 7, 2019). To be sure, there are other situations where Regulation G would not apply but are not applicable here.

---

31.     Thus, the C&DI makes clear that the so-called "business combination" exemption from the Regulation G non-GAAP to GAAP reconciliation requirement applies solely to the extent that a third-party, such as a financial advisor, has utilized projected non-GAAP financial measures to render a report or opinion to the Board.  To the extent the Board also examined and relied on internal financial forecasts to recommend a transaction, Regulation G applies.

32.     Thus, to bring the Proxy into compliance with Regulation G as well as cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

***Financial Analyses***

33.     With respect to Morgan Stanley's *Public Trading Comparables Analysis*, the Proxy fails to disclose: (i) the estimated outstanding shares of Company common stock on a fully-diluted basis applying the treasury stock method and (ii) the net debt of the Company as of June 30, 2019 and as provided by Company management on March 15, 2019.

34.     With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy fails to disclose: (i) the basis for Morgan Stanley's selection of the range of discount rate of 11.0%; and (ii) the basis for Morgan Stanley selecting the ranges of price to earnings multiples.

35.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the basis for Morgan Stanley's selection of the range of discount rate ranging from 8.8% to 10.2%; (ii) the basis for Morgan Stanley's selection of the range of perpetual growth rates ranging from 1% to 3%; (iii) the net debt of the Company as of June 30, 2019; and (iv) the total outstanding fully-diluted shares of Company common stock.

36.     With respect to Morgan Stanley's *Precedent Transactions Analysis*, the Proxy fails to disclose: (i) the net debt of the Company; and (ii) the individual premiums for the transactions observed by Morgan Stanley in the analysis.

37.     With respect to Greenhill's *Selected Comparable Company Analysis*, the Proxy fails to disclose the individual multiples and metrics for the companies observed by Greenhill in the analysis.

38.     With respect to Greenhill's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the individual inputs and assumptions underlying the discount rate range of 9.00% to 11.00% and the range of perpetuity growth rates of 2.50% to 3.50%; (ii) the fully-diluted Company shares as of June 30, 2019; and (iii) the terminal values for the Company.

39.     With respect to Greenhill's *Selected Precedent Transactions Analysis*, the Proxy fails to disclose the individual multiples and metrics for the transactions observed by Greenhill in the analysis.

40.     In sum, the Proxy independently violates both: (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial measure to their most directly comparable GAAP equivalent; and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Proxy to garner votes in support of the Proposed Transaction from EFI shareholders.

41.     Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, currently scheduled for July 15, 2019, Plaintiff will not be able to make a fully informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**FIRST CAUSE OF ACTION**
**(Against All Defendants for Violations of Section 14(a) of the Exchange Act**
**and 17 C.F.R. § 244.100 Promulgated Thereunder)**

42.     Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

43.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to

solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

44.     As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a). SEC Regulation G among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a).

45.     The failure to reconcile the numerous non-GAAP financial measures included in the Proxy violates Regulation G and constitutes a violation of Section 14(a).

## SECOND CAUSE OF ACTION
### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

46.     Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

47.     SEC Rule 14a-9 prohibits the solicitation of shareholder votes in registration statements that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

48.     Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure . . . contains an untrue statement of a material fact or omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading." 17 C.F.R. § 244.100(b).

49.     Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the financial

forecasts for the Company.

50.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

51.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

52.     The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

53.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial forecasts.

54.     EFI is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

55.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

56.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**THIRD CAUSE OF ACTION**
**(Against The Individual Defendants for**
**Violations of Section 20(a) of the Exchange Act)**

57.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58.     The Individual Defendants acted as controlling persons of EFI within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of EFI, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

59.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing the Proxy.

61.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the

content of those descriptions.

62.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

64.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.     In the event that the proposed transaction is consummated, rescinding it and setting it aside, or awarding rescissory damages;

C.     Awarding compensatory damages against Defendants, individually and severally, in an amount to be determined at trial, together with pre-judgment and post-judgment interest at the maximum rate allowable by law, arising from the Proposed Transaction;

D.     Awarding Plaintiff the costs and disbursements of this action and reasonable allowances for fees and expenses of Plaintiff's counsel and experts; and

E.     Granting Plaintiff such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

---

1    DATED: June 17, 2019

2

3                                                      **WOLF HALDENSTEIN ADLER**
                                                          **FREEMAN & HERZ LLP**

4

5                                                      By:  */s/ Rachele R. Byrd*
                                                       RACHELE R. BYRD
                                                       MARISA C. LIVESAY
6                                                      BRITTANY N. DEJONG
                                                       750 B Street, Suite 1820
7                                                      San Diego, CA 92101
                                                       Telephone: (619) 239-4599
8                                                      Facsimile: (619) 234-4599
                                                       byrd@whafh.com
9                                                      livesay@whafh.com
                                                       dejong@whafh.com

10                                                     **Of Counsel**:

11                                                     **WOLF HALDENSTEIN ADLER**
                                                          **FREEMAN & HERZ LLP**
12                                                     GLORIA KUI MELWANI
                                                       270 Madison Avenue
13                                                     New York, NY 10016
                                                       Telephone: (212) 545-4600
14                                                     Facsimile: (212) 686-0114

15                                                     ***Counsel for Plaintiff***

16

17

18

19

20

21

22

23

24

25

26

27   804860

28